UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
**Fort Lauderdale Division**

In re:
PATH MEDICAL LLC,   Case No. 21-18338-SMG
PATH MEDICAL CENTER HOLDINGS, INC.   Case No. 21-18339-SMG
Administrative Consolidation Requested

Chapter 11

Debtors.
_____/

## DECLARATION OF MANNY FERNANDEZ IN SUPPORT OF FIRST DAY MOTIONS

I, Manny Fernandez, pursuant to Section 1746 of the United States Code, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am the Chief Executive Officer of Path Medical, LLC ("Path") and Path Medical Center Holdings, Inc. ("Holdings" and together with Path, the "Debtors").

2. I am familiar with the Debtors' day-to-day operations, business, financial affairs, and books and records. I submit this declaration (the "Declaration") to assist the Court and parties-in-interest in understanding the circumstances that compelled the commencement of this chapter 11 case and in support of: (a) the Debtors' petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") filed on August 28, 2021 (the "Petition Date"); and (b) the relief that the Debtors have requested from the Court pursuant to the motions and applications described herein (collectively, the "First Day Motions").

3. I further believe that absent (i) authorization to retain bankruptcy counsel; (ii) immediate access to cash collateral, and (iii) authority to make certain employee wage payments and otherwise continuing to conduct business in the ordinary course, as described herein and in the First Day Motions, the Debtors will suffer immediate and irreparable harm to the detriment of its estate, creditors, and other stakeholders.

4. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my discussion with the members of the Debtors' management, information provided to me by the team working under my supervision, or the Debtors' professional advisors, Edelboim Lieberman Revah PLLC ("ELR") as legal restructuring counsel, or my opinion based upon my experience and knowledge. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

### I. Background.

5. The Debtors are: i) a healthcare business; and ii) its holding company. Path provides acute trauma treatment and diagnostic imaging services to its medical patients. Path operates a multi-disciplinary medical practice consisting of more than two-dozen offices throughout the state of Florida.

6. All of Path's health care centers are "Joint Commission accredited", which means the nation's oldest and largest standards-setting and accrediting body in the healthcare industry determined that Path meets the highest standards by which healthcare organizations are evaluated in the United States. This is unique in Path's industry.

7. Holdings is the 100% owner and sole member of Path. In addition to its ownership of Path, Holdings is an employee leasing company. Holdings' employees are leased to Path through an employee leasing agreement. With accounting entries, the employee compensation is charged by Holdings to Path. In their ordinary course of business, Path pays the employee costs. Path and Holdings share the same secured creditors who are secured by substantially all assets of both Debtors.

8. In addition to treating uninsured patients and patients injured in slip-and-fall and other non-automobile accident injuries, the Path often receives payment for these health care services through, among other things, assignments of patients' Personal Injury Protection ("PIP") benefits paid by automobile insurance companies.

9. Such an assignment permits a healthcare provider to "stand in the shoes" of the patient and make claims for PIP benefits directly to an automobile insurance company. PIP is an extension of traditional automobile insurance mandated for all owners of motor vehicles registered in the state of Florida.

10. Separately, Path contracts physicians through independent contractor agreements. These physicians treat, diagnose and render services to patients using their best and independent judgment. The physicians are paid under their independent contracts directly by Path. The physicians are not employees of either of the Debtors. The physicians do not have any ownership or investment interest in either of the Debtors.

11. Holdings currently employs 281 individuals, who are leased to and work in Path's locations throughout Florida. Holdings' employees perform a variety of critical functions for the Debtors' businesses.

12. The skill and expertise of the employees are fundamental to the success of the Debtors' businesses and operations and, as a result, critical to this chapter 11 case.

13. The Debtors will use the protections and tools afforded by the Bankruptcy Code to resolve its financial issues and reorganize to emerge from bankruptcy so that Path may continue as a healthy and well-capitalized company capable of continuing its operations and providing medical care to its patients.

14. The Debtors believe that based on their income stream and accounts receivable, the

Debtors will be able to confirm a plan.

## II.　Events Leading to Chapter 11.

15.　The Debtors (with Path as a primary obligor and Holdings as a guarantor) estimate that they are obligated in the total amount of $75,000,000.00 (Seventy Five Million Dollars and xx/00) (the "Obligations") to several lenders including (i) Medley Capital Corporation; (ii) Sierra Income Corporation; (iii) Medley Opportunity Fund III LP, and (iv) Medley Credit Strategies (KOC) LLC pursuant to pursuant to that certain Credit Agreement, dated as of October 11, 2016 (as amended by that certain First Amendment to Credit Agreement dated as of October 28, 2016, as further amended by that certain Second Amendment to Credit Agreement dated as of December 22, 2016, as further amended by that certain Third Amendment to Credit Agreement dated as of December 20, 2017, as further amended by the Fourth Amendment and Waiver to Credit Agreement, dated as of November 2, 2018, as further amended by the Fifth Amendment and Waiver to Credit Agreement, dated as of June 28, 2019, as further amended by the Sixth Amendment and Forbearance Agreement dated on or around August 31, 2020, as further amended by the Extension and Amendment of Sixth Amendment and Forbearance Agreement dated as of January 4, 2021, and as the same may be amended, amended and restated, restated, supplemented or modified at any time hereafter (the "Credit Agreement"). The Credit Agreement is scheduled to mature on October 11, 2021.

16.　Despite substantial efforts to negotiate a restructuring of its obligations to its lenders prior to the Petition Date, the Debtors were unable to successfully come to a resolution with the lenders.  Although the lenders and the Debtors did not reach a resolution of the debt restructuring prior to the Petition Date, the Debtors are hopeful that the lenders will ultimately support the Debtors' reorganization efforts.

17. Prior to the Petition Date, the lenders exercised certain rights under the Credit Agreement and swept approximately $1.9 million from the Debtors' operating accounts leaving the Debtors with cash flow deficiencies and limited liquidity. To avoid further disruption to the Debtors' business, effectuate a global restructuring of its debts and capital structure, the Debtors commenced the instant Chapter 11 cases.

### III. Relief Sought in First Day Papers.

18. The Debtors have filed several First Day Motions seeking relief that is necessary to enable the Debtors to smoothly transition into this chapter 11 case and minimize disruptions to their business operations. I respectfully submit that the relief requested in each of the First Day Motions should be granted, because such relief is a critical element in stabilizing and facilitating the Debtors' operations during the pendency of this chapter 11 case.

19. A summary of the relief requested in each First Day Motion is set forth below. I have reviewed each of the First Day Motions and confirm that all of the facts set forth therein are true and correct to the best of my knowledge and belief, based upon my personal knowledge of the Debtors' businesses, employees, contractors, operations, and finances; information learned from my review of relevant documents; my discussions with other members of the Debtors' management and advisors; information provided to me by employees and consultants working under my supervision; or my opinion based on experience, knowledge, and information concerning the Debtors' businesses.

### A. Emergency Motion to Employ ELR.

20. By the *Emergency Application Of Debtors-In-Possession For Entry Of An Interim Order Authorizing The Employment And Retention Of Brett D. Lieberman And The Law Firm Of Edelboim Lieberman Revah PLLC As Counsel For Debtors-In-Possession Effective As of the*

*Petition Date and Entry of Final Order* [ECF No. 7] (the "Emergency Motion to Employ"), the Debtors seek the entry of an interim order authorizing the Debtor to employ and retain Brett D. Lieberman, Esq. ("Lieberman") and the law firm of Edelboim Lieberman Revah PLLC ("ELR") as its bankruptcy counsel with regard to the filing of its Chapter 11 petition and the prosecution of its Chapter 11 case.

21. Continued representation of the Debtors by their bankruptcy counsel, ELR, is critical to the success of the Debtors' effective and efficient reorganization and because Lieberman and ELR are most familiar with the Debtors' financial and legal affairs and their ongoing efforts to restructure their obligations.

22. The Debtors have selected ELR as their attorneys because of the firm's experience with and knowledge of the Debtors and their financial and legal affairs, as well as their extensive experience with and knowledge in the field of debtors' and creditors' rights and business reorganizations under Chapter 11 of the Bankruptcy Code.

23. The Debtors desire to employ ELR under a general retainer because of the extensive legal services that will be required in connection with their Chapter 11 cases and the firm's familiarity with the business of the Debtors.

24. The services of Lieberman and ELR are necessary to enable the Debtors to execute faithfully their duties as debtors-in-possession. Subject to order of this Court, ELR will be permitted to render, among others, the following services to the Debtors:

   (a) advise the Debtors with respect to their powers and duties as debtors and debtors-in-possession in the continued management and operation of their businesses and properties;

   (b) attend meetings and negotiate with representatives of creditors and other parties-in-interest and advise and consult the Debtors in connection to the Chapter 11 cases, including without limitation, all of the legal and administrative requirements of operating in Chapter 11;

    (c)    advise the Debtors in connection with post-petition financing arrangements and draft documents relating thereto;

    (d)    take all necessary actions to protect and preserve the Debtors' estate, including the prosecution of actions on their behalf, the defense of any actions commenced against the estate, negotiations concerning all litigation in which the Debtors may be involved and objections to claims filed against the estate;

    (e)    prepare on behalf of the Debtors all motions, applications, answers, orders, reports and papers necessary to the administration of the estate;

    (f)    negotiate and prepare on the Debtors' behalf a plan of reorganization, disclosure statement and all related agreements and/or documents, and take any necessary action on behalf of the Debtors to obtain confirmation of such plan;

    (g)    attend meetings with third parties and participate in negotiations with respect to the above matters;

    (h)    appear before this Court, any appellate courts, and the U.S. Trustee, and protect the interests of the Debtors' estates before such courts and the U.S. Trustee; and

    (i)    perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the Chapter 11 cases.

25.    ELR is willing to act on behalf of the Debtors as set forth above.

26.    Without counsel, the Debtors cannot effectively proceed with their cases and reorganization efforts will be materially harmed. As the Debtors' bankruptcy counsel, ELR will play an integral role throughout the case.

    **B.**    **Emergency Cash Collateral Use Motion.**

27.    By the *Emergency Motion for Authorization to Use Cash Collateral* [ECF No. 9] (the "Emergency Cash Collateral Use Motion"), the Debtors seek the entry of an Order authorizing the Debtors to use Cash Collateral, as that term is defined in 11 U.S.C. § 363(a). The Debtors propose to use the Cash Collateral in the ordinary course of business and pursuant to its budget,

attached to the Emergency Cash Collateral Use Motion as Exhibit "A". The Debtors also intend to pay its proposed counsel, ELR, to the extent permitted, using the Cash Collateral.

28. Path operates a multi-disciplinary medical practice consisting of more than two-dozen offices throughout the state of Florida wherein Path renders treatment to a range of patients suffering acute injuries. The continued operation of Path's business will preserve their going concern value and enable Path to provide essential services to its patients.

29. The Debtors' use of the Cash Collateral includes, but is not limited to, the use of the Debtors' cash to pay for the ordinary operating expenses of Path, to render treatment to its patients and to pay for the costs associated with the Chapter 11 cases.

30. If the Debtors are unable to operate and provide their respective services, it will have an adverse effect on their businesses and Path's patients, and it will greatly reduce the likelihood of a meaningful recovery to creditors.

31. The Debtors are aware of several creditors that have a secured interest in the Cash Collateral. The Debtors are aware that the cash currently held in their accounts constitute the collateral of certain lenders, namely: (i) Medley Capital Corporation; (ii) Sierra Income Corporation; (iii) Medley Opportunity Fund III LP, and (iv) Medley Credit Strategies (KOC) LLC, who are represented pursuant to that certain credit agreement with Medley Capital LLC as Administrative and Collateral Agent (together, the "Secured Creditor").

32. The Debtors have provided sufficient and adequate protection to these Secured Creditors to ensure that their purported secured claims are protected. The Debtors offer as adequate protection a replacement lien on any post-petition assets of the Debtors to the same extent, validity and priority held by such Secured Creditor that existed prior to the Petition Date in addition to other forms of adequate protection.

33. If the Debtors cannot use Cash Collateral, they will be unable to continue their business operations and to provide necessary care for Path's patients.

34. By contrast, granting authority for the use of Cash Collateral will allow the Debtors to maintain operations and preserve the going concern value of their businesses, which will inure to the benefit of the Secured Creditors and all other creditors.

C. **Motion to Pay Prepetition Wages.**

35. The Debtors have also filed an *Emergency Motion For Authorization To Pay Prepetition Wages, Payroll Taxes, And Related Administrative Obligations* [ECF No. 12] (the "Wages Motion").

36. By the Wages Motion, the Debtors seek the authority of the Court to pay certain prepetition wages, payroll taxes and payroll expenses. By this Motion, the Debtors seek an Order of this Court providing the Debtors the discretion to pay certain pre-petition wages, salaries, payroll taxes and related payroll expenses.

37. Path's business provides medical services to patients. Without the skilled employees of Holdings who are leased to Path and without Path having the ability to directly independently contract its physician staff, all of whom are independent contractors, the Debtors will be unable to provide services and will be unable to generate sufficient cash to pay their operating expenses and preserve the Debtors' operations.

38. If Holdings does not timely pay its employees, and if Path does not timely pay its independently contracted physician staff, the Debtors face substantial risk that they will lose their employees and contractors, which can substantially disrupt their businesses and further exacerbate the Debtors' financial difficulties.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 31, 2021
Broward County, Florida

By: _____
Manny Fernandez as authorized representative of the Debtors and Chief Executive Officer