UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

In re:

PATH MEDICAL LLC,   Case No. 21-18338-SMG
PATH MEDICAL CENTER HOLDINGS, INC.   Case No. 21-18339-SMG
Jointly Administered

Chapter 11

Debtors.
_____/

**DEBTORS' AND NON-DEBTOR INDEMNITEES' MOTION FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT IT MAY APPLY, TO PERMIT AMERICAN INSURANCE GROUP, INC. TO ADVANCE DEFENSE COSTS SUBJECT TO TERMS, CONDITIONS, AND LIMITATIONS OF THE POLICY**

Path Medical, LLC ("Path Medical") and Path Medical Center Holdings, LLC ("Holdings") (collectively, the "Debtors")[1]; the Debtors' former Chief Executive Officer, Dr. Robert Lewin; the "Medical Directors"[2]; and the Chiropractor Defendants[3] (collectively, the "Movants"), by and through undersigned counsel, and pursuant to 11 U.S.C. § 362(d) and Federal Rule of Bankruptcy Procedure 4001, respectfully move (the "Motion") this Court for relief from the automatic stay, to the extent it may apply, to permit Movants' primary Directors and Officers ("D&O") insurance carrier, American Insurance Group, Inc. ("AIG"), to (1) advance payment of and reimburse defense costs, including attorneys' and experts' fees and costs incurred and to be incurred in connection with the State Farm Litigation (defined below), and (2) reimburse the Debtors for qualified payments made to such attorneys and experts above the self-insured retention amounts, all in accordance with and subject to the terms, conditions, and limitations of that certain

---

[1] All claims brought against Holdings have been dismissed.
[2] The Debtors' "Medical Directors" include the following persons: David Chessman, D.O.; Chintan Desai, M.D.; Ralph Marino, M.D.; Tie Qian, M.D.; Roger Ramos, M.D.; Donald Thomas III, M.D.; Nelson Vazquez, M.D.; and Michael Wilensky, M.D.
[3] The Debtors' "Chiropractor Defendants" include the following persons: Brittany Chong, D.C.; Ronald Golden, D.C.; William Kurzbuch, D.C.; Frank Lassiter, D.C.; Adam Lewis, D.C.; Dheeraj Manocha, D.C.; Lisa Nerbonne, D.C.; Kieron Parchment, D.C.; Joseph Sefick, D.C.; and Sarah Vleko.

insurance policy issued by AIG and AIG's approval letter. In support of the Motion, the Movants state as follows:

**Statutory Basis**

1.  The statutory predicates for the relief sought herein are 11 U.S.C. § 362(d) and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

2.  On August 28, 2021 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtors have operated as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.  On September 27, 2021, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed in these jointly administered chapter 11 bankruptcy cases.

4.  Path Medical is a healthcare business that provides acute trauma treatment and diagnostic imaging services to its medical patients. Path Medical operates a multi-disciplinary medical practice consisting of more than two-dozen offices throughout the state of Florida.

5.  Holdings is the 100% owner and sole member of Path Medical. In addition to its ownership of Path Medical, Holdings is an employee leasing company and leases its employees to Path Medical.

6.  For insured patients, Path Medical receives payment for these health care services through, among other things, assignments of patients' personal injury protection benefits, payable by automobile insurance companies issued to owners and operators of motor vehicles, pursuant to Section 627.7407, Florida Statutes. Among other things, these assignments permit a health care

provider to "stand in the shoes" of the patient and make claims for PIP benefits directly to an automobile insurance company.

7. State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company (collectively, "State Farm") are just two of the many PIP insurers that provide coverage for Path Medical's patients.

8. In its ordinary course of business, Path Medical seeks reimbursement from State Farm for medical services provided to State Farm's insureds. Florida's PIP Statute requires that State Farm pay or deny any claim submitted pursuant to the PIP Statute within 30 days. If State Farm has a reasonable belief of fraud regarding the submission of a claim, then the statute provides State Farm an additional 60 days to investigate and either approve or deny the claim. Applicable law requires any disrupt regarding a claim for PIP benefits must be adjudicated on the individual merits of each particular claim presented.[4]

9. Until October 16, 2020, State Farm processed, and paid claims submitted by Path Medical pursuant to the statutory time requirements and did not raise any concerns related to alleged fraud and other alleged wrongdoing (The Debtors and other covered parties dispute any allegations of wrongdoing and assert there is no liability).

10. Then, on October 16, 2020, without prior notice or warning, State Farm filed a federal lawsuit alleging RICO and fraud in connection with <u>all</u> claims previously submitted by Path Medical over nearly a four-year period while at the same time unlawfully terminating reimbursement on a wholesale basis for all current and prospective claims submitted by its current

---

[4] *See Fla. Stat. §§ 627.736(4)(i)*, *626.9541(1)(i)3.d., f. and 626.878*; *Fla. Admin. Code R. 69B-220.201(3)(c), (d), (e); and see Derius v. Allstate Indem. Co.*, 723 So. 2d 271, 274 (Fla. 4th DCA 1998) ("Whether a given medical service is 'necessary' under section 627.736(1)(a) is a question of fact for the jury. . . decided by fact-finders <u>on a case by case basis</u>. . .") (emphasis added).

and future insureds for services they may receive at Path Medical. State Farm named the Debtors[5]; the Debtors' former CEO, Dr. Lewin; Medical Directors; and Chiropractor Defendants and others as defendants in the case captioned *State Farm Automobile Insurance Company et. al. v. Robert Lewin, D.C., et. al.*, Case No. 8:20-cv-02428-VMC-TGW, pending in the United States District court for the Middle District of Florida (the "District Court Action").[6] The litigation as to Path Medical is stayed pursuant to the automatic stay and stayed as to all defendants for 120 days from September 14, 2021, pursuant to an agreed order entered in the District Court Action.

11. The District Court Action alleges—falsely and wrongly—that among other things, Path Medical's entire business operation is unlawful, and that Path Medical's operations must permanently cease.[7] State Farm's initial Complaint was dismissed in part on one of its chief legal theories, and Path Medical's motion to dismiss the Amended Complaint (with its significantly altered legal theories) remains pending in the stayed litigation. Path Medical and the other defendants, including the Movants, deny the claims and pre-petition were vigorously defending the lawsuit.

---

[5] All claims brought against Holdings have been dismissed.

[6] The complaint filed in the District Court Action names the following entity defendants: Path Medical, LLC, Path Medical Center Holdings, Inc., and 1-800-411-Pain Referral Service, LLC. The complaint names the following individual defendants: Dr. Lewin and the Medical Directors, and the Chiropractor Defendants. Approximately half of the nearly 50 physicians who treat patients at Path Medical were not named as defendants by State Farm, which is incongruous with State Farm's position that all treatment rendered, and therefore all claims submitted for reimbursement, by Path Medical are unlawful and non-compensable.

[7] Ignoring that all Path Medical facilities are Joint Commission Accredited, and that all treating physicians at Path Medical are independently contracted with none of them receiving any form of incentive-based compensation and none of them having any form of ownership or investment interest in Path Medical; State Farm attempts to allege that all of the independently contracted, flat fee, treating physicians (including the dozens not named as defendants) conspire to render unlawful care to patients using an impermissible "predetermined protocol" (which is neither a medical nor a legal term of art; and is cut from whole cloth). State Farm's claims are not only untrue, but they are also implausible and legally untenable. Prior to October 16, 2020, State Farm never challenged claims as to the 3,222 Path Medical patients insured by State Farm since 2017 under the ordinary insurance claim process and Florida's PIP statute.

12. As required by the applicable insurance policies and indemnification obligations to officers and directors, the Debtors were funding the defense of the District Court Action. The Debtors must continue to put forth a strong defense of this baseless District Court Action because State Farm has been trying to inflict severe economic pain and financial hardship on the Debtors.[8]

13. In this bankruptcy case, State Farm also has filed more than thirty-five (35) separate notices to remove (the "Removal Actions") various PIP lawsuits commenced by Path Medical against State Farm in Florida small claims courts (the "PIP Suits"), where jury trial demands are pending.[9] Path Medical has filed motions for remand and/or for abstention directed at the removal notices, which Path Medical was compelled to prepare and file for its benefit and the benefit of the other Movants.

14. State Farm's litigation efforts, both in the District Court Action and the misuse of the Removal Actions, wherein State Farm attempts to improperly conflate disparate issues raised in the District Court and the County Courts, and any motions or objections filed or to be filed in this bankruptcy case relating to State Farm's claims asserted in the State Farm District Action, are collectively referred to as the "State Farm Litigation."

---

[8] In suing, State Farm employed a litigation strategy and "bullying" tactic to create immense financial pressure. State Farm attempts to use these "strike lawsuits" as leverage for settlement given the revenue drain caused by State Farm's unilateral and unlawful refusal to pay current and prospective benefits they are <u>statutorily obligated</u> to pay under the PIP Statute. *See Geico v. Virtual Imaging*, 141 So. 3d 147 (Fla. 2013) ("Without a doubt, the purpose of the no-fault statutory scheme is to provide swift and <u>virtually automatic payment</u> so that the injured insured may get on with his [or her] life without undue financial interruption.") (quoting *Ivey v. Allstate Ins. Co.*, 774 So.2d 679, 683–84 (Fla.2000)) (emphasis added). While the benefits are not paid to Path Medical, the benefits are being paid to the next health care providers in line for reimbursement for treating the same State Farm insureds until the <u>finite</u> benefits exhaust (maximum of $10,000), leaving Path Medical without a remedy as State Farm runs out the clock and gains an unfair litigation advantage. Delay exposes Path Medical to the significant risk that the PIP benefits available under the policies will be exhausted by payments to other providers. Under the Florida PIP Statute, State Farm is permitted to reimburse providers with PIP benefits on a <u>first come first serve basis until exhaustion</u> of the policy benefits (i.e., a maximum of $10,000), and is not required to set aside reserves related to amounts contested in litigation. *See, e.g., GEICO Indem. Co. v. Gables Ins. Recovery, Inc.*, 159 So. 3d 151, 154 (Fla. 3d DCA 2014).

[9] Commencing an individual lawsuit before a Florida County Court is the exclusive statutorily mandated mechanism through which Path Medical collects receivables before the courts with **exclusive jurisdiction** to hear such matters. These PIP lawsuits are properly pending before the Florida County Courts.

### *The AIG Policy*

15. The Debtors have an insurance policy with American Insurance Group, Inc. ("AIG") that provides primary D&O coverage for the claims asserted in the State Farm Litigation (the "AIG Policy")[10] against the Movants.

16. The AIG Policy, Policy No. 01-310-17-36, is a claims-made policy covering claims made between April 30, 2020 to April 30, 2021 (the "Policy Period").

17. AIG was notified of the allegations made by State Farm against the Movants within the Policy Period, which triggered coverage under this particular AIG Policy. A copy of the AIG Policy is attached hereto as **Exhibit 1**. The Private D&O Coverage Section provides coverage for the Loss[11] of: (1) any Insured Person[12] that no Organization[13] has indemnified or paid arising from

---

[10] AIG Claims, Inc. is the authorized representative of National Union Fire Insurance Company of Pittsburgh, Pa., which issued its PortfolioSelect Policy Number 01-310-17-36 to Path Medical and Holdings. Any description of the AIG Policy in this Motion is qualified in its entirety by the express terms of the AIG Policy and shall be resolved in favor of the AIG Policy.

[11] In pertinent part, under the Private D&O Coverage Section of the AIG Policy (p. 23 or 28), "Loss" means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), Defense Costs, Derivative Investigation Costs, Liberty Protection Costs and Pre-Claim Inquiry Costs; however, "Loss" (other than Defense Costs) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) any amounts for which an Insured is not financially liable or which are without legal recourse to an Insured; and (4) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Notwithstanding the foregoing subparagraph (4), the Insurer shall not assert that, in a Securities Claim alleging violations of Section 11, 12 or 15 of the Securities Act of 1933, as amended, the portion of any amounts incurred by Insureds which is attributable to such violations constitutes uninsurable loss, and, unless precluded from doing so in a court order, shall treat that portion of all such settlements, judgments and Defense Costs as constituting Loss under this Coverage Section.

[12] In pertinent part, under the Private D&O Coverage Section of the AIG Policy (p. 22 of 28), "Insured Person" means, means any: (1) Executive of an Organization; (2) Employee of an Organization; or (3) Outside Entity Executive.

[13] In pertinent part, in the General Terms of the AIG Policy (p. 7 of 7), "Organization" means: (1) the Named Entity; (2) each Subsidiary; and (3) in the event a bankruptcy proceeding shall be instituted by or against any of the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

a Claim[14] made against such Insured Person for any Wrongful Act[15]; (2) an Organization arising from any Claim made against an Insured Person for any Wrongful Act of such Insured Person but only to the extent that the Organization had indemnified the Insured Person for such Loss; and (3) an Organization arising from a Claim made against such Organization for any Wrongful Act.

18. Subject to its terms and conditions, the AIG Policy has a limit of liability of $1,500,000.00, which is the maximum limit of liability for all loss arising out of the claims made against the Movants and is applicable to indemnity and defense costs. The AIG Policy has a self-retention requirement of $1,000,000 (the "SIR") that the Debtors had to and did exhaust from their own funds to satisfy the defense costs before AIG was required to fund any costs of defense arising from the State Farm Litigation.

19. In addition to the AIG Policy, Movants are insured, inter alia, under a series of excess layers of insurance coverage for a total amount of $9 million in coverage, plus an additional $1 million in drop down Side A coverage available under certain conditions to certain executives, through various policies of insurance summarized as follows:

| Excess Layer | D&O Insurer | Amount of Excess D&O Coverage | Aggregated Total D&O Coverage |
|---|---|---|---|
| First | Markel American Insurance Company | $1,500,000 excess $1,500,000 | $3 million |

---

[14] In pertinent part, under the Private D&O Coverage Section of the AIG Policy (p. 19 of 28), "Claim" means: (1) a written demand for monetary, non-monetary or injunctive relief, including, but not limited to, any demand for mediation, arbitration or any other alternative dispute resolution process; (2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; (3) an Insured Person Investigation; (4) a Derivative Demand; or (5) an official request for Extradition of any Insured Person, or the execution of a warrant for the arrest of an Insured Person where such execution is an element of Extradition.

[15] In pertinent part, under the Private D&O Coverage Section of the AIG Policy (p. 28 of 28), "Wrongful Act" means: (1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act: (i) with respect to any Executive or Employee of an Organization, by such Executive or Employee in his or her capacity as such or any matter claimed against such Executive or Employee solely by reason of his or her status as such; (ii) with respect to any Outside Entity Executive, by such Outside Entity Executive in his or her capacity as such or any matter claimed against such Outside Entity Executive solely by reason of his or her status as such; or (2) with respect to an Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Organization.

| | | | |
|---|---|---|---|
| Second | Republic Vanguard Insurance Company | $1,500,000 excess $3,000,000 | $4.5 million |
| Third | Argonaut Insurance Company | $1,500,000 excess $4,500,000 | $6 million |
| Fourth | Ironshore Indemnity Company | $3,000,000 excess $6,000,000 | $9 million |
| Difference in Conditions Side A Only Executive Advantage | Liberty Surplus Insurance Corp. | $1,000,000 excess of $9,000,000 | |

20. Section 12 of the General Terms & Conditions of the AIG Policy (p. 5 of 7), expressly provides that all the Movants, as insured parties, shall cooperate in efforts to release the AIG Policy from the effects of any automatic stay.

21. AIG recognizes this situation and, as noted, has agreed to pay attorneys' fees and expenses (including experts) arising in connection with the disputes and litigation with State Farm, including the State Farm Litigation, subject to the AIG Policy terms and conditions and the "AIG Approval Letter" attached to the Foley Retention Application, which process was described in the Foley Retention Application. The AIG Policy and AIG Approval Letter are for the benefit of the Movants.

22. Specifically, AIG has consented to the retention and direct payment of Foley & Lardner LLP[16] and Davis Goldman, PLLC[17] to represent Debtors (Path Medical only post-petition, unless that entity is somehow added back into the legal disputes) and Dr. Lewin and also has consented to the retention of Sisco-Law to represent the Medical Directors and Chiropractic Defendants in connection with the State Farm Litigation (collectively, the "Law Firms"). AIG also has agreed to pay directly from the proceeds of the AIG Policy the costs and expenses related to

---

[16] On October 6, 2021, this Court authorized the retention of Foley & Lardner LLP as special counsel for the Debtors. ECF #122.

[17] On October 13, 2021, this Court authorized the retention of Davis Goldman, PLLC as special counsel for the Debtors. Order subject to entry.

8

the foregoing law firms' experts incurred in connection with the State Farm Litigation (the "Experts").

## RELIEF REQUESTED AND LEGAL BASIS FOR RELIEF

23. While the "automatic stay" may not apply to AIG's ability to directly pay the Law Firms and Experts pursuant to the terms of the AIG Policy and AIG Approval Letter, as is common in many bankruptcy cases, AIG has requested that the Debtors obtain an order from the Court authorizing AIG to pay counsel and experts defending the Movants directly consistent with the terms of the AIG Policy and AIG Approval Letter.[18]

24. Thus, the Movants request that the Court enter a "comfort order" confirming that: the automatic stay does not apply or that if it does, the automatic stay is modified, to the extent necessary to allow AIG to make payments and/or advancement of defense costs for the benefit of the Movants in accordance with the terms, conditions, and exclusions of the AIG Policy and AIG Approval Letter.

25. Path Medical also requests the Court enter an order authorizing AIG to reimburse the Debtors in the approximate amount of $100,000.00 that was paid prior to the commencement of the bankruptcy case in excess of the SIR required by the AIG Policy.

### A. Components AIG Policy Proceeds Are Not Property of the Debtors' Estate.

26. Section 362(a) of the Bankruptcy Code provides that the commencement of a bankruptcy case operates as an "automatic stay" of any act to obtain property of the debtor's estate. 11 U.S.C. § 362(a).

---

[18] The Law Firms representing the Debtors also understand that the approval order requested by the Motion does not affect the terms and conditions of orders approving their retention.

27. Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

28. An insurance policy, including a Directors & Officers policy (commonly referred to as a "D&O policy") that provides protection for and is issued to a debtor may be "property of the estate" within the meaning of the Bankruptcy Code. *See In re Allied Digital Technologies Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004). However, the status of an insurance contract as property of the bankruptcy estate is not determinative of whether the "proceeds" payable under that D&O policy (i.e., the payments made by the insurer pursuant to the insurance contract) also constitute property of the estate. *Id.*

29. Courts have explained the analysis to determine whether policy proceeds from a directors and officers insurance policy are property of an estate. On one hand, when a debtor's liability insurance policy only provides direct coverage to the debtor, the proceeds are property of the estate. *In re Downey Fin. Corp.,* 428 B.R. 595, 603–04 (Bankr. D. Del. 2010) (citing *In re Matter of Vitek, Inc.,* 51 F. 3d, 530, 535 (5th Cir. 1995); *Allied Digital Technologies Corp.*, 306 B.R. at 509).

30. On the other hand, where, as here, a liability insurance policy provides direct coverage to the directors and officers, proceeds are not property of the estate. *See Id.* "When the liability insurance policy provides direct coverage to both the debtor *and* the directors and officers, the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution" (emphasis in original). *Id.*

31.     Here, the AIG Policy proceeds are for defending and paying or settling the claims brought in the State Farm Litigation, particularly the claims against the non-Debtor Defendants. Accordingly, the components of the proceeds of the AIG Policy would not otherwise be available to creditors of the Debtors' estates, nor will it adversely impact the value of the estates' assets.[19]

32.     To that point, Section 12 of the General Terms & Conditions of the AIG Policy (p. 5 of 7) provides, in pertinent part: "Bankruptcy or insolvency of any Insured or of their estates shall not relieve the Insurer of <u>any</u> of its obligations under this policy." (emphasis added).

33.     The AIG proceeds payable to the non-Debtor Movants and for their defense costs are not property of the estate and the automatic stay does not prevent AIG from paying any such policy proceeds to them by making the payments directly to their counsel and experts.

**B.      The Automatic Stay Should be Modified to the Extent Applicable**

34.     To the extent that the automatic stay applies, cause exists to grant limited relief from the automatic stay to permit AIG to pay costs and fees resulting from or relating to a claim covered by the AIG Policy.  The detrimental effect of not granting the relief requested in this Motion on the Movants and the balance of the harms and the interests of judicial economy all weigh in favor of lifting the stay.

35.     Assuming, *arguendo*, that insurance proceeds are property of the estate, § 362(d) of the Bankruptcy Code provides, in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property;

11 U.S.C. § 362(d)(1).

---

[19] Of course, the Court's granting of this Motion will permit the Path Medical also to defend the claims made it and greatly minimize the estate's exposure for defense costs.

36. Courts frequently grant stay relief to allow payment of defense costs or settlement costs to directors and officers. *See Allied Digital Technologies, Corp.,* 306 B.R. 505 (Bankr. D. Del. 2004) (noting that "without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [] claims and may suffer substantial and irreparable harm. The directors and officers bargained for this coverage.").

37. For example, in *In re Arter & Hadden L.L.P.*, 335 B.R. 666 (Bankr. N.D. Ohio 2005), the insurance policy at issue covered the debtor and its officers and employees, who demanded coverage. While the court found the proceeds were property of the estate, the court also determined "cause" existed to lift the automatic stay because directors and officers were at risk to "suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense." *Id*.

38. Moreover, courts have permitted the payment by insurance carriers of defense costs for the benefit of a debtor's current and former directors, officers and employees, even where such advances may ultimately reduce the total funds available directly to cover the debtor. S*ee e.g., In re MF Global Holdings Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012) (noting courts which have permitted the advancement of defense costs to a debtor's directors even though the directors' policies provided direct coverage to the debtor); *Downey*, 428 B.R. at 595 (finding that the proceeds were not property of the estate, but even if they were, cause existed to grant relief form stay to permit use of policy proceeds for payment of defense costs); *In re Enron Corp.*, 2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 18-19 (Bankr. D. Mass. 2002) (finding cause to grant relief from stay because directors and officers would suffer irreparable harm if prevented from using D&O policy proceeds to pay defense costs).

39.     In the present case, "cause" exists to lift the automatic stay, to the extent it applies, to permit AIG to pay to counsel and experts for the Debtors and other Movants the defense costs, without determining whether or to what extent the proceeds of the AIG Policy may constitute property of the estate.

40.     The non-Debtor Movants, as well as the Debtors, relied on the protection afforded to them by the AIG Policy, and they will suffer substantial injury if they cannot benefit from the entire purpose of the AIG Policy when they need it most. The bankruptcy estate will suffer that same fate in such an event. The Debtors do not have independent recourses to defend the State Farm Litigation.

41.     Accordingly, because the AIG Policy covers the Movant's defense costs in connection with the State Farm Litigation, including legal fees and expenses (including experts) that have been incurred and continue to incur, and AIG has agreed to pay the same directly to the Law Firms and Experts subject to (i) the terms of the AIG Policy and Approval Letter and (ii) entry of an order of this Court authorizing AIG to pay the same, the Movants respectfully request that the Court enter an order authorizing AIG to (a) pay the accrued and future defense costs to be incurred in connection with the State Farm Litigation and (b) reimburse Path Medical the costs of defense that were incurred and paid by the Debtors in excess of the SIR.

## **RESERVATION OF RIGHTS**

42.     This Motion is not and shall not be deemed to be an admission by the Movants of any fact, liability, or other matter whatsoever. The filing of this Motion is not and shall not be deemed to constitute a waiver for any of the Movants' rights under the AIG Policy, at law or in equity, and the Movants expressly reserve all such rights.[20] The Movants acknowledge that AIG

---

[20] The Movants acknowledge that AIG reserves its rights to deny or reduce defense costs submitted for payment as provided by the terms and conditions of the AIG Policy and the AIG Approval Letter.

reserves its rights to withhold any portion of indemnity and/or defense costs as provided by the terms and conditions of the AIG Policy.

**WHEREFORE**, the Movants respectfully request that the Court enter an Order (i) granting the relief requested in this Motion; (ii) finding that AIG's payment of defense costs (including attorneys' and experts' fees and costs) related to the State Farm Litigation does not violate the automatic stay, and therefore AIG is authorized to pay those defense costs, or alternatively, modifying the automatic stay to permit AIG to pay those defense costs; (iii) authorizing AIG to pay outstanding and future fees and costs related to the State Farm Litigation, subject to the terms of the AIG Policy and Approval Letter; (iv) authorizing AIG to reimburse Path Medical in the amount of approximately $100,000.00 for prepetition expenditures paid by the Debtors in excess of the SIR; (v) and for such other and further relief as may be just and proper

Respectfully submitted this October 22, 2021.

| */s/Brett D. Lieberman* | */s/ Dale R. Sisco* |
|---|---|
| Brett D. Lieberman | Dale R. Sisco |
| Edelboim Lieberman Revah PLLC | Sisco Law P.A. |
| Florida Bar No.: 69583 | Florida Bar No.: 559679 |
| Address: 20200 W. Dixie Highway, Suite 905 | Address: 1110 N. Florida Avenue |
| Miami, FL 33180 | Tampa, FL 33602 |
| Telephone: 305-768-9909 | Telephone: 813-224-0555 |
| Email: brett@elrolaw.com | Email: dsisco@sisco-law.com |
| Email: morgan@elrolaw.com | Attorneys for Medical Directors and |
| Attorneys for Path Medical | Chiropractic Defendants |
| */s/ Scott A. Underwood* | |
| Scott A. Underwood | |
| Underwood Murray, P.A. | |
| Florida Bar No.: 0730041 | |
| Address: 100 North Tampa Street, Suite 2325 | |
| Tampa, FL 33602 | |
| Telephone: 813-540-8401 | |
| Email: sunderwood@underwoodmurray.com | |
| Email: mmurray@underwoodmurray.com | |
| Attorneys for Dr. Robert Lewin | |