

ORDERED in the Southern District of Florida on July 15, 2022.

**Scott M. Grossman, Judge**
**United States Bankruptcy Court**

___

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

| | |
|---|---|
| PATH MEDICAL LLC, | Case No. 21-18338-SMG |
| PATH MEDICAL CENTER HOLDINGS, INC. | Case No. 21-18339-SMG |
| | Jointly Administered |
| Debtors. / | Chapter 11 |

**ORDER GRANTING DEBTORS' EXPEDITED MOTION FOR ENTRY OF ORDER (A) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS AND (B) AUTHORIZING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS INCLUDING TREATMENT OF <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

**THIS CAUSE** came before the Court for hearing on July 15, 2022 at 1:30 p.m. (the "<u>Hearing</u>") upon the *Debtors' Motion For Entry of Order (A) Authorizing Sale of Substantially All of Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests;(B)*

*Authorizing Procedures for the Assumption and Assignment of Executory Contracts Including Treatment of Executory Contracts and Unexpired Leases; and (C) Granting Related Relief* (the "Motion")[1] [ECF No. 416] filed by Path Medical, LLC ("Path") and Path Medical Center Holdings, Inc. ("Holdings" and together with Path, referred to collectively as the "Debtors"). The Court having reviewed the Motion, and the record in these cases, and having considered presentation by counsel for the Debtors, and the evidence adduced by the Debtors at the Hearing, the Court finds that the relief sought by the Motion, is in the best interests of the Debtor's bankruptcy estate for the reasons stated on the record at the Hearing.

Accordingly, **IT IS FOUND AND DETERMINED THAT**:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014(c).

B. The Court has jurisdiction over the Motion and the transactions contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409;

C. The statutory bases for the relief requested in the Motion are (i) sections 105, 363, 364 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and (ii) Bankruptcy Rules 2002(a)(2), 6004, 6006 and 9014 and (iii) Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules");

---

[1] All capitalized terms not expressly defined herein shall have the meanings ascribed to them in the Motion or that certain Asset Purchase Agreement attached to the Motion (as amended, modified or supplemented, the "APA"), as applicable.

D.  Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to creditors, equity holders and other parties in interest;

E.  The Motion is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale (the "Sale") of substantially all of the Debtors' assets (the "Transferred Assets");

F.  The Debtors articulated good and sufficient reasons for the Court to approve the Sale and the Asset Purchase Agreement (the "APA");

G.  The Debtors' senior secured lenders, by and through the administrative and collateral agent Sound Point Agency, LLC have consented to the terms of the Sale for the Transferred Assets pursuant to the terms and conditions of the APA;

H.  The entry of this Order is in the best interests of the Debtors, their estates, their creditors, equity holders and other parties in interest; and

I.  The Sale was reasonably designed to maximize the value to be achieved for the Transferred Assets.

**IT IS THEREFORE ORDERED THAT:**

1.  The Motion is **GRANTED** as set forth herein.

2.  All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled and denied on the merits.

**Approval of Sale of Substantially All of the Debtors' Assets**

3.     The offer by the Purchaser set forth in the APA to purchase the Transferred Assets is the highest and best offer for the purchase of the Transferred Assets and represents fair and adequate consideration for the Transferred Assets.

4.     The form and substance of the APA (including any modifications thereto included in this Order) and the transactions contemplated thereby are hereby approved in all respects. After the date of entry of this Order, the Debtors and the Purchaser may enter into any non-material amendment or modification to the APA (with the prior written consent of the Lenders) that is not adverse to the Debtors' estates and not inconsistent with Debtors' Plan[2] without the need of further notice and hearing or Court order, but subject to reasonable advance written notice to the counsel for the Committee.

5.     The execution, delivery and performance of the APA by the Debtors are hereby ratified and authorized in all respects. Other than any required approvals from the State of Florida (if any), no further consents or approvals are required for the Debtors to consummate the Sale, the APA, or the transactions contemplated thereby.

6.     The Purchaser shall close (the "Closing") under the APA by no later than July 31, 2022. The date of the Closing shall be referred to herein as the "Closing Date".

7.     Subject to the terms and conditions of the APA and pursuant to Section 363(f) of the Bankruptcy Code, the Debtors shall be, and hereby are, authorized and directed to sell, transfer, assign and deliver the Transferred Assets to the Purchaser free and clear of any and all liens, claims, encumbrances and interests, subject to the payment by the Purchaser of the Purchase Price (as defined in the Asset Purchase Agreement). The Debtors are authorized to execute and deliver all

---

[2] Debtors' *Second Amended Joint Chapter 11 Plan of Liquidation* (ECF No. 319) (the "Plan").

documents (both before and after the Closing) and to take all appropriate actions necessary to evidence and consummate the Closing on the sale of the Transferred Assets to the Purchaser and the transactions contemplated thereby. Any and all claims, liens, encumbrances, and interests shall attach to the proceeds of the sale to the same extent, validity, and priority as existed immediately prior to the Sale.

8. The Transferred Assets do not include the Excluded Assets; specifically, all Avoidance Actions (as defined in the Debtors' Plan), claims against Debtors' insurance broker, all claims and Causes of Action related to transfers or payments from the Debtors to the ESOP (as defined in the Debtors' Plan), and Preserved D&O Claims (as defined in Debtors' Plan) are Excluded Assets and shall be transferred to the Liquidating Trust consistent with the Debtors' Plan. Moreover, Debtors shall be permitted to retain copies of its books and records and transfer same to the Liquidating Trustee (as defined in the Plan) consistent with the Plan.

9. Upon payment of the Closing Payment (defined below), all persons and entities holding liens, claims, or interests in the Transferred Assets arising under or out of, in connection with, or in any way relating to the Debtors, the Transferred Assets, the operations of the Debtors' businesses prior to Closing or the transfer of the Transferred Assets to the Purchaser are forever barred, estopped, and permanently enjoined from asserting against the Purchaser or its successors and assigns, its property, or the Transferred Assets, such person's or entity's interests in and to the Transferred Assets.

10. The APA is valid and enforceable and binding on the Purchaser. After the Closing, the Purchaser shall pay and perform all of the obligations set forth in the APA.

11. The transfer of the Transferred Assets to the Purchaser is a legal, valid, and effective transfer of the Transferred Assets and upon closing the Transferred Assets will vest the Purchaser

with all right, title and interest of the Debtor in and to the Transferred Assets, free and clear of all Encumbrances of any kind or nature whatsoever.

12. The Transferred Assets are transferred to the Purchaser "AS IS WHERE IS" with no representations or warranties other than the representations and warranties that are contained in the provisions of the APA.

13. At the Closing, the Purchaser shall pay or deliver to the Debtors' Seller Counsel, Davis Goldman, PLLC by wire transfer of immediately available funds, the balance of the Purchase Price (the "Closing Payment").

14. If any person or entity that has filed financing statements or other documents or agreements evidencing liens, claims, encumbrances or interest in the Transferred Assets shall not have delivered to the Debtors at or prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of such liens, claims, encumbrances or interests which the person or entity has with respect to the Transferred Assets, the Debtors or the Purchaser, as the case may be, is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Transferred Assets. The Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, encumbrances or interests in or on the Transferred Assets of any kind or nature whatsoever.

15. The Debtors and the Purchaser have acted in good faith, the terms and conditions of the Asset Purchase Agreement are fair and reasonable and have been negotiated and agreed upon in good faith on the part of the Debtors and the Purchaser, the Consideration paid by the

Purchaser under the APA is a fair and reasonable price for the Transferred Assets, and the Purchaser is an arm's length purchaser who is purchasing the Transferred Assets in good faith.

16. The Purchase Price includes reasonably equivalent and fair market value for the Debtors' interests in the Transferred Assets under the Bankruptcy Code and applicable non-bankruptcy law. Accordingly, the Purchaser shall be entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

17. On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Transferred Assets and a bill of sale transferring good and marketable title in the Transferred Assets to the Purchaser free and clear of all liens, claims, encumbrances and interests. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

18. The sale of the Transferred Assets by the Debtors is in contemplation of, a necessary condition precedent and essential to, and necessary to consummate and implement the confirmation of the Debtors' plan of liquidation (the "Plan") in this case and, subject to the Debtors obtaining confirmation of a Plan prior to the Closing, constitutes a transfer to which Section 1146(a) of the Bankruptcy Code applies. Subject to the entry of an order confirming a plan prior to the Closing, the Debtors and the Purchaser shall be entitled to any and all rights and benefits that may be afforded to them by Section 1146(a) of the Bankruptcy Code. Pursuant to Section 1146(a) of the Bankruptcy Code, the sale or transfer of the Transferred Assets, or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer or sale of any property of, by or in the Debtors

pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to accept and abide by the terms of this Order and to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

19. The failure of the Court to confirm a plan of reorganization shall not affect this Order.

20. Any taxes related to the Transferred Assets accruing after the Closing Date shall be the responsibility of the Purchaser. Any taxes related to the Transferred Assets that have accrued on or prior to the Closing Date (including Broward County personal property taxes) shall be the responsibility of the Debtors and shall be paid first out of the available cash or the proceeds of the Sale. Upon the consummation of the Closing on the purchase of the Transferred Assets and payment of taxes accrued on or prior to the Closing Date on the Transferred Assets, any taxing authorities or governmental agencies having jurisdiction over the Transferred Assets shall have no further claim against the Debtors or the estate for taxes (excluding income taxes) arising from the Transferred Assets accruing after the Closing Date.

21. Upon the closing of the Sale, the Purchaser shall take title to and possession of the Transferred Assets subject only to the Assumed Liabilities, Permitted Liens and any interests expressly provided for in this Order, and the Purchaser specifically shall take title free and clear

of any successor liability claim that could be asserted by any entity or person, including but not limited to the United States or the State of Florida, through any agency including but not limited to the U.S. Department of Justice, the U.S. Department of Health and Human Services, Florida Agency for Health Care Administration, or Florida Attorney General's Office, against Purchaser.

22. Other than amounts owed to SSG Capital Advisors, LLC, the Debtors shall not be liable for, and no portion of the Purchase Price or the Deposit shall be disbursed for, any brokerage commissions or finder's fees with respect to the sale of the Transferred Assets, other than to SSG Capital Advisors, LLC.

23. Notice of the Sale Motion, Sale Objection Deadline, the Cure Objection Deadline, the Assumption Objection Deadline, and the Asset Purchase Agreement, to creditors of the Debtors and other parties in interest, is adequate and sufficient, complies in all respects with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court and otherwise satisfies the requirements of due process.

24. Any creditor of the Debtors, or other party in interest that did not file and serve, on or before 4:00 pm on July 13, 2022, a written objection to the Sale Motion or the sale and related transactions contemplated by the Asset Purchase Agreement shall be, and hereby is, conclusively deemed to have waived any objection it may have to the Sale Motion or the sale of the Transferred Assets to the Purchaser, and any related transactions contemplated under the APA, and to have released all liens, claims, encumbrances and interests in or on or with respect to the Transferred Assets.

25. With the sole exception of any obligations of the Purchaser under the APA or this Order, the Purchaser does not and shall not be deemed to, pursuant to the APA or otherwise, assume, agree to perform, or pay any liens, claims, encumbrances and interests, any liabilities,

claims, debts or obligations of the Debtors. The Purchaser shall not be, nor shall it be deemed to be, a successor or successor in interest to the Debtors, or to have, de facto or otherwise, merged with or into the Debtors, or to be a mere continuation of the Debtors, by reason of any theory of law or equity, and the Purchaser shall not have any successor or transferee liability of any kind or character.

26. The terms and provisions of this Order shall be binding upon the Debtors and their estates, creditors and stakeholders, the Purchaser, any objecting parties, all parties to executory contracts and leases to be rejected or otherwise not assumed by the Debtors, and all other parties in interest and the respective successors and assigns of each of the foregoing (all of the foregoing whether known or unknown), including any trustee subsequently appointed for or on behalf of the Debtors under the Bankruptcy Code in this Chapter 11 case or upon a conversion to Chapter 7.

27. The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety (as modified herein). To the extent there is any inconsistency between the provisions of this Order and the terms of the APA or the Sale Motion or any plan confirmed in this case or any order confirming such plan or any other order entered in this case, the provisions of this Order shall control.

28. This Court shall retain jurisdiction (a) to interpret, implement and enforce the provisions of this Order, and (b) to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) subject to the terms and conditions of the APA, compel delivery of the Transferred Assets to the Purchaser or the performance of other obligations of the Debtors under the APA and each of

the agreements executed in connection therewith, (ii) compel delivery of the Purchase Price by the Purchaser or the performance of other obligations of the Purchaser under the APA and each of the agreements executed in connection therewith, including (without limitation) the timely payment of the Closing Deposit and any assumed liabilities, and (iii) resolve any disputes arising under or related to the APA and each of the agreements executed in connection therewith, including the disbursement of the Closing Deposit; provided, however, that in the event the Court abstains from exercising or declines to exercise such jurisdiction or is without jurisdiction with respect to the APA or each of the agreements executed in connection therewith or this Order, such abstention, refusal or lack of jurisdiction shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

29. The stay imposed by Bankruptcy Rule 6004(h) is hereby waived, and the Debtors and Purchaser shall be entitled to immediately consummate all transactions contemplated by the APA and perform all obligations under the APA.

**Approval of Procedures for Assumption of Executory Contracts and Unexpired Leases**

30. The Debtors are entitled to assume and assign all Assumed Contracts and Leases to the Purchaser, without any further notice or hearing, subject only to provisions of this Order.

31. On or before three (3) business days after the entry of this Order, the Debtors shall serve by first class mail or hand delivery the notice of assumption and assignment of the Scheduled Contracts (as defined in the Cure Notice), substantially in the form attached to the Sale Motion as "Exhibit C" (the "Assumption Notice"), on all non-Debtor parties to the Scheduled Contracts (as defined in the Assumption Notice) that the Debtors intend to assume and assign. The Assumption Notice shall identify the Scheduled Contracts that the Debtor

proposes to assume and assign and provide the cure amount that the Debtors believe must be paid to cure all prepetition defaults under the Scheduled Contracts (the "<u>Cure Amounts</u>," each default a "<u>Cure Amount</u>").

32.     Unless the non-Debtor party to a Scheduled Contract (i) files an objection to (a) its scheduled Cure Amount, (b) the assumption and assignment of the Scheduled Contracts, or (c) the ability of a proposed purchaser to provide adequate assurance of future performance by the Assignment Objection Deadline or Cure Objection Deadline (as defined in the Assumption Notice), and (ii) serves a copy of the Assignment Objection or Cure Objection, so as to be received no later than the Assignment Objection Deadline or Cure Objection Deadline (as defined in the Assumption Notice) as applicable, on the Notice Parties, such party shall be deemed to consent to the Cure Amount proposed by the Debtors and shall be forever barred and estopped from objecting to the Cure Amount, and from asserting that (A) any additional amounts are due or defaults exist, (B) any conditions to assumption and assignment must be satisfied under such Scheduled Contract before it can be assumed and assigned to the Purchaser, (C) any required consent to assignment has not been given, or (D) the Purchaser has not provided adequate assurance of future performance.

33.     In the event of a dispute regarding: (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Purchaser to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable after the Closing, from the Debtors' available cash or proceeds received at Closing, and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; <u>provided, however,</u> that the Debtors, with

the consent of the Purchaser, as applicable, is authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Purchaser without any further notice to or action, order or approval of the Court.

34. In the event any non-Debtor party to a Scheduled Contract timely objects to the calculation of the Cure Amount for such Scheduled Contract designated by the Debtors and alleges that the Cure Amount for such Scheduled Contract exceeds the amount calculated by the Debtors for such Scheduled Contract (the amount of such excess Cure Amount for the Scheduled Contract in question, the "Excess Cure Amount"), then, (i) the Debtors shall provide written notice to the Purchaser of such Cure Amount objection and the amount of such Excess Cure Amount for each of the proposed Scheduled Contracts, and (ii) the Purchaser shall, within three (3) business days after receipt of such notice from the Debtors, either (a) notify the Debtors that it elects not to assume such Scheduled Contract or (b) take no action with respect to such notice, in which case, such Scheduled Contract shall continue to be assumed by the Debtors and assigned to the Purchaser at the Closing. At the Closing, the Debtors shall retain, from the proceeds of the Sale received by the Debtors at the Closing, the aggregate Excess Cure Amounts for all Scheduled Contracts in escrow and shall use commercially reasonable efforts to resolve such discrepancy with such non-Debtor parties to the Scheduled Contract after the Closing. In the event that the Debtors do not resolve such discrepancy with such non-Debtor party, the Debtors shall deliver such Excess Cure Amount to the non-Debtor party to the Scheduled Contract in accordance with the APA, to the extent required following the Closing and the entry of a final order resolving any Cure Objection.

35. Within two (2) business days after the Closing Date, the Debtors shall file a complete list of the Scheduled Contracts that were assumed and assigned, as of the Closing Date

with the Purchaser.

36. Upon the service of the Assumption Notice and the expiration of the Cure Objection Deadline, the Assignment Objection Deadline, all non-Debtor parties to the Scheduled Contracts that did not timely file a Cure Objection or an Assignment Objection, shall be bound by the terms of this Order and such Scheduled Contracts shall be deemed to be cured, assumed and assigned under Section 365 of the Bankruptcy Code without further order of this Court.

37. All of the Debtor's executory contracts or unexpired leases which have not been expressly assumed by the terms of this Order shall be treated by the Debtors under the Plan.

###

Submitted By:

Brett D. Lieberman, Esq.
EDELBOIM LIEBERMAN REVAH PLLC
20200 W. Dixie Hwy., Suite 905
Miami, FL 33180
Telephone: 305-768-9909
Facsimile: 305-928-1114
Email: brett@elrolaw.com

*Attorney Brett D. Lieberman is directed to serve a copy of this Order upon all parties in interest and file a certificate of service with the Court.*